# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JORGE NIEVES, JR.,

        Petitioner,

v.                                         Case No:  6:16-cv-1258-Orl-40TBS

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

        Respondents.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Jorge Nieves, Jr. ("Petitioner" or "Nieves").  (Doc. 1, filed July 13, 2016).   In compliance with this Court's Order (Doc. 6), Respondents filed a Response to the Petition.  (Doc. 10).  Nieves filed a Reply (Doc. 15), and the Petition is ripe for review.  For the reasons set forth below, the Petition will be denied.

## I.      Background and Procedural History

On March 14, 2012, Nieves was charged by information with one count of second degree murder, in violation of Florida Statute §§ 782.04(2) and 775.087(1).  (Doc. 11-1 at 41).  Prior to trial, Nieves filed a motion to suppress the statements he made to the police. (*Id.* at 53).  The trial court held a hearing on Nieves' motion to suppress.  (Doc. 11-33 at 56).  After the hearing, the trial court denied the motion in a written order.  (Doc. 11-2 at 11-13).

A jury found Nieves guilty as charged with a separate finding that he used a weapon during the commission of the crime. (Doc. 11-28 at 38). Nieves was sentenced to forty years in prison. (Doc. 11-29 at 1-2). His conviction and sentence were affirmed by Florida's Fifth District Court of Appeal ("Fifth DCA"). (Doc. 11-35 at 37); *Nieves v. State*, 162 So. 3d 1037 (Fla. 5th DCA 2014).

On August 28, 2015, Nieves filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). (Doc. 11-35 at 40). The post-conviction court denied the motion in a detailed written order. (*Id.* at 62). On appeal, Nieves argued only that the post-conviction court erred by failing to hold an evidentiary hearing on one of his issues, and Florida's Fifth DCA affirmed *per curiam*. (Doc. 11-37 at 15). Thereafter, Nieves filed a state petition for writ of habeas corpus in Florida's First District Court of Appeal. (Doc. 10 at 3). Nieves did not serve a copy of the petition on the State. (*Id.*). The state court dismissed the petition because it was unauthorized and filed in the wrong court. (Doc. 11-37 at 33).

## II.     Legal Standards

### A.     The Antiterrorism Effective Death Penalty Act (AEDPA)

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254; *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme

Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016), *cert granted Wilson v. Sellers*, No. 16-6855, 137 S. Ct. 1203 (2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*,

527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. *Wilson*, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)) .

## B.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. I n reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## C.    Exhaustion

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t]

federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation.  *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010).  To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in

state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray*, 477 U.S. at 479-80. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.    Analysis

Nieves raises ten claims in his habeas petition. In Claims One, Two, and Seven, he argues that the trial court erred by denying his motion to suppress; by comparing jury duty to military service; and by failing to rule on his pre-trial stand-your-ground motion. In Claims Three through Six and Eight, Nieves urges that trial counsel was ineffective for failing to: (1) object to the prosecutor's closing argument regarding the jury instructions on excusable homicide and self-defense; (2) have the jury instructed on self-defense; (3) set a hearing on Nieves' stand-your-ground motion; (4) object to the medical examiner's opinion testimony; and (5) stay awake throughout Nieves' entire trial. In Claim Nine,

Nieves asserts that the cumulative effect of trial counsel's errors resulted in a constitutional violation. (Doc. 1 at 12-18). Each claim is addressed below.

## A. Claim One

Nieves asserts that the trial court erred when it denied his motion to suppress his statement to the police. (Doc. 1 at 12). He claims that he was under heavy medication during the questioning, and was "force[d] to sign waiver of rights, interrogated by detectives, and answers later used to convict Petitioner." (*Id.*). Nieves raised this issue in a pre-trial motion to suppress (Doc. 11-1 at 43), and the trial court held an evidentiary hearing. (Doc. 11-33 at 56). The trial court heard testimony from Investigator Olga Cortizo, Investigator Rachel Rados, and Nieves. The court also reviewed a recording of the investigators' interview with Nieves. Thereafter, the trial court issued a written order finding that Nieves was in custody during the interrogation, was read the *Miranda*[1] warnings, understood the warnings, and voluntarily waived his right to remain silent:

> The Defendant argues the statements should be suppressed claiming violation of the Fifth Amendment, alleging Investigator Cortizo and/or Rados never read the Defendant his *Miranda* rights prior to questioning him. The Defendant further alleges he was under the influence of medications at the time of questioning. He argues [even] if he was read *Miranda*, that based upon the circumstance, he did not

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the United States Supreme Court concluded that a suspect who has been advised of his rights against self-incrimination "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444. It is not necessary for the accused to be read his rights verbatim as stated in the *Miranda* opinion; the important inquiry is whether the warnings, however worded, conveyed to the accused his rights. *California v. Prysock*, 453 U.S. 355, 360–61 (1981).

understand them and was unable to make a voluntary statement.

Meanwhile, on the date in question, the investigators were initially contacted by the hospital nurse that the defendant was available for an interview and lucid, as he had not had medications in at least 4 hours. The investigators responded to ORHS to Mr. Nieves' hospital room. According to the testimony, Investigator Cortizo, who is fluent in Spanish, read Jorge Nieves his Miranda Rights in Spanish. Investigator Rados observed Investigator Cortizo reading it to the defendant. The defendant acknowledged that he understood his rights. The investigators had him sign the Miranda card to demonstrate his acknowledgement. The Court listened to the complete recording of the Defendant's interview entered in evidence. On the recording, the defendant acknowledged that he was read his Miranda Rights in Spanish and understood those rights.

The court further addresses whether Jorge Nieves was under the influence at the time of his questioning and able to provide a knowing and voluntary waiver of his rights. The defendant testified at the hearing that he did not understand the rights read to him. This Court does not find this testimony credible. His testimony was inconsistent with the other evidence at the hearing. The Defendant was questioned several hours after his surgery. The hospital contacted the sheriff's office because he appeared lucid and had not had any medications for at least four hours. There is insufficient evidence as to any amount of medication given. It is evident in the recording and by way of testimony, the Defendant appeared coherent, forthcoming and responsive during questioning. He acknowledged that he was read his Miranda Rights in Spanish and he understood them. This is further evident by his signature on the Miranda Card, which was signed prior to making his statement. Based on the foregoing, this Court finds there is competent, substantial evidence that the Defendant understood his rights as they were read to him; and his statements were freely and voluntarily given.

(Doc. 11-2 at 11-13). Florida's Fifth DCA affirmed the trial court's decision without a

written opinion. (Doc. 11-35 at 37). The silent affirmance of the post-conviction court is

entitled to deference, and this Court must determine whether any arguments or theories could have supported the appellate court's decision. *Wilson*, 834 F.3d at 1235.

Whether a suspect in custody was informed of his *Miranda* rights is a question of fact; however, whether the suspect knowingly and intelligently waived his rights and whether his statements were voluntary are questions of law. *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000); *Miller v. Fenton*, 474 U.S. 104, 115 (1985) (whether a confession is voluntary under the Fourteenth Amendment is a question of law and a state-court's finding of fact on this issue is not entitled to a presumption of correctness); *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (assessing the predecessor of § 2254(e)(1)). The United States Supreme Court has explained:

> [S]ubsidiary questions, such as length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record. . . . But once such underlying factual issues have been resolved, and the moment comes for determining whether, under the totality of the circumstances, the confession was obtained in a manner consistent with the Constitution, the state-court judge is not in an appreciably better position than the federal habeas court to make that determination.

*Miller*, 474 U.S. at 117.

In the instant case, the trial court did not believe Nieves' assertions that he was not given complete *Miranda* warnings; that he did not understand the *Miranda* warnings; and that he could not have understood the warnings because he was recovering from surgery. Federal habeas courts have "no license to redetermine credibility of witnesses whose

demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Therefore, the state court's factual finding that Nieves <u>was</u> advised of his constitutional rights under *Miranda* is a question of fact that is presumed correct. 28 U.S.C. § 2254(e)(1).

The trial court also found that Nieves understood his *Miranda* rights and voluntarily waived them. (Doc. 11-2 at 12-13). Although this finding is not entitled to the same presumption of correctness under *Miller*, a review of the record supports the state court's conclusions. At the evidentiary hearing, testimony was heard from Investigator Olga Cortizo ("Cortizo") that Nieves was advised in Spanish of his *Miranda* rights prior to his statement. (Doc. 11-3 at 64). Nieves also signed a card indicating his understanding of his rights and agreeing to speak with the police. (*Id.*). Cortizo testified that Nieves appeared coherent, understood the questions asked, and was responsive to the questions. (*Id.* at 69). Cortizo further testified that Nieves did not appear to be under the influence of drugs. (*Id.* at 70). Investigator Rachal Rados ("Rados") testified that Nieves was coherent and alert when questioned, understood the questions, and "provided lots of detail." (*Id.* at 86). Rados also testified that Nieves did not appear to be under the influence of drugs or medication. (*Id.* at 89). Rados testified that the hospital had informed the investigators that Nieves was stable and had not been on any medication for more than three or four hours. (*Id.* at 95). Both investigators denied that any promises or threats were made to induce Nieves to speak with them. (*Id.* at 70, 89). At the beginning of the recorded interview with Cortizo and Rados, Nieves was asked

whether he understood his *Miranda* rights, and he indicated that he did. (T. at 293).[2]

During the recorded interview, Nieves appropriately, and without hesitation, answered the questions asked by the investigators. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010); *see also United States v. Cardwell*, 433 F.3d 378, 389–90 (4th Cir. 2005) ("Because [the defendant] had been fully informed and indicated his understanding of his *Miranda* rights, his willingness to answer [the officer]'s question is as clear an indicia of his implied waiver of his right to remain silent as we can imagine." (citation omitted)).

The totality of the circumstances supports a conclusion that Nieves understood the *Miranda* warnings given by Investigator Cortizo and that his waiver of his *Miranda* rights was knowing and voluntary. *See United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) ("Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.") (citation omitted); *Miller*, 474 U.S. at 117 (noting that a habeas court must look to the totality of the circumstances to determine whether a waiver was knowing and voluntary). The trial court considered the testimony of both Nieves and the police and rejected Nieves' claims that he did not receive or

---

[2] Although it was not played at the evidentiary hearing on Petitioner's motion to suppress, the trial judge said that she had listened to the recording of Petitioner's statement, and portions of the recording were played at trial. (T. at 293-313).

understand his *Miranda* warnings. Nieves fails to show that the state court decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law. Nieves is not entitled to habeas relief on the ground that he did not receive proper *Miranda* warnings. Claim One is denied.

## B. Claim Two

Nieves asserts that his constitutional rights were violated when the trial court compared jury duty to military service, stating "that both were necessary to protect your community and keep your community safe and secure." (Doc. 1 at 12). The complained-of comment, which occurred at the beginning of jury selection, consisted of the trial court's attempt to explain to the venire that jury duty was a form of public service:

> Like I said, I'd like you to consider this an educational experience as well as a service to your community. And to put it in this perspective, there are men and women in this country who are serving your country and serving overseas for weeks, months, years at a time, keeping your community safe and secure. And the justice system is also what keeps your community safe and secure. And without juries, the justice system would not work. And all we're asking for this week is a few days out of time rather than weeks, months, or years at a time like those men and women who are fighting for your community. So I'd like you to put it in that perspective, if you're chosen to serve on this case or actually on any case in this courthouse this week, that we're asking for some moments of inconvenience in your lives of your time to your duty to serve your community.

(T. at 8-9). Nieves argues that the statement was prejudicial because he was the only person from whom the community could be protected. (*Id.*). He asserts that the statement tainted the entire jury pool. (*Id.*). Nieves raised this claim on direct appeal as

one of fundamental error (Doc. 11-34 at 52), and it was denied by Florida's Fifth DCA. (Doc. 11-35 at 37).

Nieves does not explain how the appellate court's rejection of Claim Two was contrary to, or based upon an unreasonable application of, clearly established federal law. He does not direct this Court towards a Supreme Court case with materially indistinguishable facts that reached a different result from the state appellate court. Nor does he allege that the appellate court's rejection was based upon an unreasonable determination of the facts. Presumably then, Petitioner urges that the state court misapplied the general rule that defendants have a "due process right to a competent and impartial tribunal." *Peters v. Kiff*, 407 U.S. 493 (1972). Under *Peters*, a state criminal defendant who can demonstrate that a member of the jury that heard his case was actually biased or incompetent may be entitled to federal habeas corpus relief. *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982). Nieves has not made a showing of juror bias or incompetence; nor has he attempted to do so. Rather, he merely speculates that the trial judge's comment "was prejudicial." (Doc. 1 at 12). Because Nieves does not make a showing that any juror was actually biased against him or otherwise unfit to serve, he is not entitled to habeas corpus relief. *Rogers*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him); *Estiven v. Sec'y, Dep't of Corr.*, No. 16-14056-D, 2017 WL 6806915, at *4 (11th Cir. September 28, 2017) (noting that "speculation cannot form the basis of a valid [habeas] claim"). Claim Two is denied.

## C.       Claims Three, Four, Five, and Six

In Claims Three through Six, Nieves asserts that trial counsel was ineffective for failing to: (1) object to the prosecution's closing argument that urged the jury to ignore the instructions on excusable homicide and self-defense; (2) have the jury instructed on self-defense; (3) set a hearing for a stand-your-ground motion; and (4) object to the medical examiner's opinion testimony. (Doc. 1 at 13-15). Nieves raised these claims in his Rule 3.850 Motion (Doc. 11-35 at 40), and they were summarily denied by the post-conviction court. (*Id.* at 61-64). Although Nieves filed a notice of appeal (Doc. 11-36 at 47), in his brief on appeal, Nieves argued only that the trial court erred when it failed to hold an evidentiary hearing on his claim that trial counsel was ineffective for failing to set a hearing on his stand-your-ground motion. (Doc. 11-37 at 1-12).

Respondent urges that claims three through six are unexhausted for federal habeas review because Nieves did not appeal the post-conviction court's denial of these claims. (Doc. 10 at 6). Indeed, in the Fifth DCA, an appellant who files a brief appealing the summary denial of a post-conviction motion is required to address all arguments in his brief that he wishes to preserve for appellate review. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So.3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (on appeal of lower court's summary denial of Rule 3.850 motion without evidentiary hearing, defendant abandoned two of his three grounds for relief by raising only one ground in his appellate brief) (citing *Ward*, 19 So.3d at 1061).

The "one complete round" exhaustion requirement set forth in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) applies to post-conviction review as well; a prisoner must

appeal the denial of post-conviction relief in order to properly exhaust state remedies. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing *Coleman*); *Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) ("*Boerckel* applies to the state collateral review process as well as the direct appeal process"); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("A § 2254 habeas petition 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State, to raise, by any available procedure, the question presented.'") (citing 28 U.S.C. § 2254(c)).

"A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012). In his reply, Nieves argues that the default of these claims is excused by the Supreme Court's holding in *Martinez v. Ryan*. (Doc. 15 at 3).[3]

---

[3] In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. Under *Martinez*, a petitioner still must establish that his underlying ineffective assistance claim is "substantial" -- that is, that it has "some merit" before the procedural default can be excused. *Martinez*, 132 S. Ct. at 1318-19.

In *Martinez*, the Supreme Court relaxed the *Coleman* cause-and-prejudice standard to excuse procedural default in a narrow category of cases. Specifically, the Supreme Court determined that the procedural default of "an ineffective-assistance claim" by post-conviction counsel in an initial-review state-court collateral proceeding should be excused under a more lenient standard than cause and prejudice under *Coleman*. *Martinez*, 132 S. Ct. at 1318. However, the Court in *Martinez* was careful to restrict its holding to ineffective assistance in the <u>initial-review</u> collateral proceeding in state court. The Court wrote:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. ***The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings***, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (emphasis added)(citations omitted). In the instant case, it is only the <u>appeal</u> of an initial review collateral proceeding (the Rule 3.850 Motion) that was defaulted. Therefore, the *Martinez* exception does not apply. Broadening the rule to excuse Nieves' failure to exhaust in this case would ignore the Supreme Court's emphatic statement that the *Martinez* rule creates only a narrow exception to *Coleman's* general rule. *See Martinez*, 132 S. Ct. at 1315 (referring to a "narrow exception"); *id*. at 1320 (referring to the "limited circumstances" in which its ruling applied and discussing the "limited nature" of the

rule); *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (applying *Martinez*'s "narrow exception").

Nieves has made none of the requisite showings to excuse the default of Claims Three, Four, Five, and Six. This failure bars federal habeas review of the claims. *Coleman*, 501 U.S. at 734–35. Accordingly, Claims Three, Four, Five, and Six are dismissed as unexhausted and procedurally barred.

### D.    Claims Seven and Ten

In Claim Seven, Nieves argues that the trial court erred when it failed to rule on his stand-your-ground motion. ( Doc. 1 at 16). In Claim Ten, Nieves urges that the imposition of a forty-year sentence, followed by life probation, violates the Double Jeopardy Clause of the United States Constitution. (*Id.* at 19). Nieves raised these claims in a state petition for writ of habeas corpus that he incorrectly filed in Florida's First District Court of Appeal. (Doc. 10 at 6). The petition was dismissed as unauthorized by Florida's First DCA pursuant to *Baker v. State*, 878 So. 2d 1236 (Fla. 2004).[4] (Doc. 11-37 at 33).

---

[4] *In Baker v. State*, the Florida Supreme Court held that habeas petitions filed by noncapital defendants should be dismissed as unauthorized if the petition seeks the type of post-conviction relief that would be available through a motion filed in the sentencing court and that: (1) would be untimely if considered as a motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure; (2) raises claims that could have been raised at trial, or if properly preserved, on direct appeal; or (3) would be considered a second or successive Rule 3.850 motion that either fails to allege new or different grounds for relief or alleges new grounds that were known or should have been known at the time the first motion was filed. 878 So. 2d at 1245-46.

Because Nieves attempted to raise these claims in a manner not permitted by state procedural rules, he is barred from pursuing them in federal court absent a showing of cause and prejudice. Nieves has made none of the requisite showings to excuse the default, which bars federal habeas review of Claims Seven and Ten. *Coleman*, 501 U.S. at 734–35. Accordingly, these claims are dismissed as unexhausted and procedurally barred.

### E.     Claim Eight

In Claim Eight, Nieves urges that he was "deprived of his right to have the assistance of counsel when counsel slept through portions of Petitioner's trial[.]" (Doc. 1 at 17). Initially, Nieves urged that he raised this claim in his state habeas petition, but he did not provide the Court with a copy of the claim. Nieves' entire Claim Eight is summarized in the instant petition as follows:

> Throughout the petitioner's trial, counsel slept through a substantial portion of petitioner's trial was equivalent to no counsel at all. This effected [sic] his ability to properly object [to] witnesses, prosecution, and evidence adduced at trial and together evaluate its impact.

(*Id.*). Although Nieves now admits that this claim is unexhausted, *see* discussion *supra* Claims Seven and Ten, he urges that his failure to exhaust is excused under *Martinez v. Ryan*. (Doc. 15 at 17). Under *Martinez*, a petitioner must still establish that his underlying ineffective assistance claim is "substantial" — that is, that it has "some merit" — before the procedural default can be excused. *Martinez*, 132 S. Ct. at 1318-19. Claim Eight is unexhausted because it is not "substantial," and does not fall within *Martinez'* equitable exception to the procedural bar.

Upon review of the trial court transcript, the Court can find no instance where trial counsel was admonished for sleeping; nor does the transcript reflect that trial counsel was less than attentive at any point. Nieves does not direct this Court to any instance where counsel should have objected but failed to do so, and he has not explained how he suffered prejudice from any alleged omission. On habeas review, Nieves bears the burden of showing that he suffered prejudice from trial counsel's alleged shortcomings. *See Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) ("[I]n order to show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'") (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)).

Nieves' failure to point out a single instance where he suffered actual prejudice as a result of trial counsel's slumber is fatal to his claim. Because Claim Eight is not "substantial," *Martinez* does not excuse Nieves' failure to properly raise it in state court. *Martinez*, 132 S. Ct. at 1318-20. Nor has Nieves presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim. Claim Eight is dismissed as unexhausted.

### F.     Claim Nine

Nieves asserts that the cumulative effect of counsel's errors and trial court error deprived him of his right to due process. (Doc. 1 at 18). This Court need not determine whether this claim is exhausted or whether, under the current state of Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly

established federal law. Nieves has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. *See Morris v. Sec 'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); *Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805 (11th Cir. 2014) (same). Nieves is not entitled to federal habeas relief.

Any of Nieves' allegations not specifically addressed herein have been found to be without merit. Because the petition is resolved on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## IV. Certificate of Appealability

Nieves is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Nieves must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Nieves has not made the requisite showing in these circumstances.

Because Nieves is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

ACCORDINGLY, it is hereby **ORDERED:**

1. The Petition for Writ of Habeas Corpus filed by Jorge Nieves, Jr. (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

3. Nieves is **DENIED** a certificate of appealability.

4. The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Orlando, Florida on February 26, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties
SA: OrlP-4